## HAWAIIAN BELL TELEPHONE CO. *vs.* ORIENTAL TELEPHONE CO.

### IN EQUITY.   BEFORE JUDD, C.J.

### MAY, 1883.

Where a fraud is charged to have been committed against a corporation in regard to allotment of shares, the corporation, and not aggrieved shareholders, is the proper party plaintiff.

It appearing that certain shares, held by defendant, were not obtained without consideration or by fraudulent misrepresentations, the Court declines to order them delivered up for cancellation.

### DECISION OF JUDD, C.J.

The following abstract of the bill and answer I have taken from the brief of defendant's counsel.

1. That June 14, 1881, 505 shares of the stock of the Hawaiian Bell Telephone Co. were issued in the name of the Oriental Telephone Co. (Limited) of London, the certificates of said shares being signed by S. G. Wilder, then vice-president, and C. O. Berger, secretary of the said Hawaiian Bell Telephone Co., and being now in the possession of the defendant E. P. Adams, as agent of the Oriental Telephone Co. This averment is admitted in the answer.

2. That 55 of said shares were paid for, and 450 of them were issued wholly without consideration and by fraud on the part of the said Oriental Telephone Co. The answer denies this averment.

3. That in February, 1880, a list of subscribers had been obtained by said Berger for the purpose of forming a telephone company. (The answer neither admits nor denies this, but leaves it to be proved by the plaintiff.) That in October, 1880, before obtaining a charter of incorporation, the Oriental Bell Telephone Co. of Boston, through its agent Samuel Hubbard, represented to the individuals now forming the Hawaiian Bell Telephone Co.

that the said Oriental Bell Telephone Co. held patents upon the telephone instruments, and that none of said instruments could be manufactured, bought or used without the consent of said Oriental Bell Telephone Co., and that said (Oriental Bell) Telephone Co. had the sole and exclusive right to dispose of the same, and that it would be impossible for a company to engage in the telephone business in Honolulu without the consent of said Oriental Bell Telephone Co. (The answer denies this allegation.) That after His Majesty in Privy Council had decided to grant a charter of incorporation to said Hawaiian Bell Telephone Co., said Hubbard, November 23, 1880, on behalf of said Oriental Bell Telephone Co., reiterated the statements above alleged as to the rights and powers of said Oriental Bell Telephone Co. at a meeting of the individuals who had petitioned for said charter, and to whom the same was afterwards granted. The answer denies this allegation.

4. That said Hubbard at said meeting offered that if 450 shares of the Hawaiian Bell Telephone Co. should be issued to the said Oriental Bell Telephone Co., it would grant to the Hawaiian Bell Telephone Co. the sole right to use telephone instruments in the Hawaiian Islands, and would furnish and supply telephone instruments to the Hawaiian Bell Telephone Co., and would make concessions to said Hawaiian Bell Telephone Co. of rights and privileges belonging to and exclusively possessed by said Oriental Bell Telephone Co., and would prevent all persons other than the Hawaiian Bell Telephone Co. from using in the Hawaiian Islands or importing therein any telephone instruments or apparatus. The answer denies information or belief of this averment.

5. That the Hawaiian Bell Telephone Co. believing said representations, and relying upon the ability of said Oriental Bell Telephone Co. to fulfil and make good all of the promises and undertakings made and assumed by them as above alleged, and in consideration that said Oriental Bell Telephone Co. could and would do so, agreed to issue to said Oriental Bell Telephone Co. 450 shares of the capital stock of said Hawaiian Bell Tele-

phone Co., and relying, etc., as above, etc., also erected lines of
telephone wires in said Honolulu, and made large expenditures
of money in so doing. The answer denies this averment.

6. That June 14, 1881, while H. A. Widemann, President of
the Hawaiian Bell Telephone Co., was absent from this country,
said E. P. Adams, acting agent of the Oriental Telephone Co.,
(Limited), persuaded and induced S. G. Wilder, at that time
Vice-President of the Hawaiian Bell Telephone Co., to issue 450
shares of the capital stock of said Hawaiian Bell Telephone Co.
That said S. G. Wilder was ignorant of the falsity of the
representations made by said Oriental Bell Telephone Co. to the
complainant, and caused such shares to be issued, believing
said defendant was entitled to the same. That said E. P.
Adams caused said stock to be issued in the name of the Ori-
ental Telephone Co., (Limited), representing that said Oriental
Bell Telephone Co. had become merged in said Oriental Tele-
phone Co., and that the latter had full knowledge of the repre-
sentations made by said Oriental Bell Telephone Co. to the
company complainant, and had assumed all the obligations and
understandings above set forth and made to the company com-
plainant by the Oriental Bell Telephone Co. The answer denies
the above averments, and avers that Wilder caused said 505
shares to be issued to said Oriental Telephone Co., (Limited),
believing the latter company to be entitled to the same, and not
by reason of any false representations or any representations
of whose truth or falsity he was ignorant, and admits that
Adams caused said stock to be issued in the name of the Ori-
ental Telephone Co., (Limited), representing that said Oriental
Bell Telephone Co. had become merged in said Oriental Tele-
phone Co., (Limited), but denies that he represented that the
latter company had full knowledge or any knowledge of the
representations made as in said bill of complaint alleged by
said Oriental Bell Telephone Co. to the company complainant,
or had assumed the obligations and undertakings in said bill of
complaint set forth.

7. That on or about January, 1882, the company complainant

discovered that the representations made to it by said Oriental Bell Telephone Co. were wholly false; that said Oriental Bell Telephone Co. had no exclusive rights nor any rights in regards to the telephone in the Hawaiian Islands; that the concessions granted by said company to the company complainant were wholly illusory and fraudulent, and that telephone instruments manufactured in the United States were imported into this country and 'sold openly to any person desiring to purchase the same; that said Oriental Telephone Co., Limited, when called upon by the company complainant to protect them in their exclusive rights to use and sell telephones in the Hawaiian islands, acknowledged that it was unable to do so. The answer denies this averment specifically.

8. That said Berger, the said secretary, was unwilling to issue said shares in the name of the Oriental Telephone Co., as he had no authoritative notice of any transfer of said shares by said Oriental Bell Telephone Co., and he signed said certificate only upon the express direction of said vice-president upon the threat of being removed from his office if he refused to do so. The answer denies this averment, and avers that Berger delayed issue of 505 shares solely because of his claim that he was entitled to receive, in consideration of his having obtained said subscriptions, certain paid-up shares in the companies complainant and defendant, which shares he has since received as of the value of $840.

9. That said Oriental Bell Telephone Co. and said Hubbard, at the time of making the representations and promises above set forth, well knew that the same were false, and that they were unable to fulfil or perform the same, and that said Oriental Telephone Co., at the time said shares were issued to it, well knew the promises and undertakings of said Oriental Bell Telephone Co. above alleged, and that the same could not be performed and that the same were false and fraudulent. That said E. P. Adams has been requested to surrender said certificates for cancellation so far as said 450 shares are concerned, and has been tendered a new certificate for said 55 shares, but he refuses

to surrender or receive the same. The answer admits said request to surrender, but denies said tender, and denies the other averments.

The bill prays for process, that defendant be ordered to deliver said 450 shares for cancellation, and that said Adams be enjoined from disposing of said certificate of shares, for costs and general relief.

The answer further avers that the promises alleged in the bill to have been made by said Hubbard were beyond his power to make, and if made were not binding at law or in equity upon the company defendant; that the company complainant hath no right or cause of action against these defendants by reason of anything contained in said bill; also, that the promoters of the company complainant well knew all the power and authority of said Hubbard in the premises, and that he neither could bind nor agree to bind the Oriental Bell Telephone Co. to the securing or granting to the company complainant the exclusive right to buy or sell telephone instruments in this Kingdom.

Also, that the agreement made by said Hubbard on behalf of said Oriental Bell Telephone Co. with the promoters of the company complainant, was that he should assist in the organization and establishing of said Hawaiian Bell Telephone Co. and in starting the same in its business in said Kingdom, in furnishing information and facilities in that behalf then available from no other source, and that much valuable plant, the property of said Oriental Bell Telephone Co., should be transferred to said Hawaiian Bell Telephone Co. to enable it to commence operations. That said Oriental Bell Telephone Co. would sell its Bell telephones to the said Hawaiian Bell Telephone Co., and that in consideration thereof the Oriental Bell Telephone Co. should have 505 paid-up shares in said Hawaiian Bell Telephone Co., all of which said agreement was faithfully kept and performed by said Hubbard; and that the plant so transferred to said Hawaiian Bell Telephone Co. was of the value and was by said company accepted as of the full value of $1233, and further that the said Oriental Bell Telephone Co. expended in the forming of said Hawaiian Bell Telephone Co., in the expenses of the

said Hubbard in coming to this Kingdom and remaining here for the purpose aforesaid, the sum of and over $1500, all of which was well known to the said Hawaiian Bell Telephone Co. and formed a full and legal consideration for the said stock so issued as aforesaid to the company defendant.

BY THE COURT.

Without detailing the evidence, which is quite lengthy, I consider the following to be the undisputed facts of this case. A number of gentlemen in Honolulu had agreed to form a company to establish a telephone system in this city. The promoter was C. O. Berger, with whom was associated a Mr. Thompson. These persons secured the agreement of a number of persons to have telephone stations at their houses, and another list of subscribers to take stock in the company to be formed. Mr. Berger corresponded with parties in California endeavoring to procure the necessary instruments, but was unsuccessful. Mr. Thompson was equally unsuccessful after personal efforts in San Francisco. Shortly before this the Oriental Bell Telephone Co. was formed in Boston, having secured from the American Bell Telephone Co. the right to sell and use the telephone apparatus of this company in Polynesia, Australia, China and India. This company learning that there was a prospect of establishing a telephone system in Honolulu, sent hither Samuel Hubbard as their agent. He arrived here October 4th, 1880, having brought with him considerable telephone apparatus and soon connected with Mr. Berger. At a meeting of the subscribers to the contemplated company, held November 23d, 1880, Mr. Hubbard read or showed a prospectus prepared by him in which the capital stock was put at $10,000, divided into 1000 shares at the par value of $10. The prospectus reads "Stock to be disposed of as follows:

| | |
|---|---:|
| "To Oriental Bell Telephone Co., for patent rights, concessions &c., valued at $4500 | 450 |
| "To Oriental Bell Telephone Co.  Cash fully paid | 60 |
| "To subscribers remainder of shares at $5 each, remaining $5 subject to calls as required | 490 |
| "Total | 1,000 |

It will thus be seen that the Oriental Bell. Telephone Co. secured a majority of the stock.

The subscribers proceeded to apply for a Charter of Incorporation, which was granted December 30th, 1880, and the company organized in due form, and have made a success of the business, having extended their system of exchanges beyond all expectations. The stock is now sought for at $70 to $75 per share. Mr. Hubbard left the islands December 21st, 1880, but before he left he had received intelligence that the Oriental Bell Telephone Co. had disposed of its property. It subsequently transpired that it had sold out to the Oriental Telephone Co. (Limited), of London, which company was incorporated under the laws of Great Britain on February 7th, 1881. There is in evidence a letter dated at the office of the Oriental Telephone Co. (Limited), London, May 18th, 1881, from "Samuel Hubbard, late special agent Oriental Telephone Co.," to H. A. Widemann, President of the Hawaiian Bell Telephone Co., requesting him to transfer the 505 shares standing in his name as trustee for the Oriental Bell Telephone Co. as follows: "505 shares to Oriental Telephone Co., (Limited), and five shares to Mr. Berger according to agreement." On the 9th June, 1881, during the absence abroad of H. A. Widemann, the President of the Hawaiian Bell Telephone Co., the secretary of the company, Mr. C. O. Berger, was requested by Mr. E. P. Adams (defendant), the agent of the Oriental Telephone Co. of London, to transfer the stock to this company. And it was accordingly done a few days later by the secretary at the instance of Mr. Wilder, the vice-president, and is now held by Mr. Adams. The secretary entered this allotment of stock in the stock-book of the corporation, as of January 6th, 1881, the date when the other shares were alloted to the subscribers. At a meeting of the company held September 11th, 1882, it was voted to charge the Oriental Telephone Co. with $4500, being for 450 shares at its par value of $10. Against this action Mr. Adams protested formally. This suit was commenced February 23d, 1883.

Objections are urged by the defendant's counsel that this bill

is improperly brought by the corporation, whereas it should have been brought by aggrieved shareholders. But in this case a fraud is charged as having been committed against the corporation, in procuring an allotment of shares to be made by illusory and fraudulent representations, and I think the corporation was the proper party to bring the bill.

The counsel for defendant also urges that as the power is not granted by the charter of the corporation of declaring forfeiture of shares, so the Court has no jurisdiction to declare a forfeiture. This may be good law but it does not apply, for the bill does not ask for a "forfeiture" of the shares; it prays that they may be delivered up for cancellation, as if they never had been allotted. I consider this a very different matter from the forfeiture of shares for non-payment of assessments.

I now pass to the consideration of the alleged false and illusory representations and promises of Mr. Hubbard to the Honolulu subscribers which, it is alleged, induced them to allow his company to take a majority of the paid-up stock. I think the apparent contradictions may be reconciled without imputing intentional falsehood to any one. It seems to me that Mr. Hubbard did use language from which it might be inferred that no telephone instruments could be bought or obtained in Honolulu, except through the Oriental Bell Telephone Co., but it cannot be doubted that he meant the "Bell Hand Telephone or Receiver," and the "Blake Transmitter," because these were the instruments controlled by this company, and he says that they then had bought up all the patent rights of other inventors in the United States. That he had in mind these instruments is evidenced by the name of the company to be formed here, as appears by his prospectus, *i.e.*, "The Hawaiian 'Bell' Telephone Co." Some of the witnesses say that he said "these instruments." He may have said "these instruments," meaning those he had brought with him, *i.e.*, the Bell Telephone and Blake Transmitter, and his hearers understood the word "telephone" to be used in its generic sense and to include all telephones of whatever pattern or invention. The consideration he

undertook to give for this stock in the prospectus was the "Patent Rights and concessions." This must mean such as were then held by the Oriental Bell Telephone Co. This Mr. Hubbard said was what he guaranteed. There is no proof before me that this engagement has been broken.

Some of the witnesses understood that Mr. Hubbard undertook to protect the Hawaiian Bell Telephone Co. from infringements in this Kingdom of the patents held by his company. This is not at all likely. It is not to be lightly presumed that a person would make an impossible undertaking. A slight enquiry would make it certain that unless these instruments were protected by Letters Patent in this country, imitations of them, equally efficient as those bearing the official stamp of the company, could be made abroad and imported here, or made in this country with complete impunity.

Every one is presumed to know the law, and I must presume that the Honolulu subscribers knew that Mr. Hubbard could not protect them against infringements in this country of the telephones his company controlled.

It is evidence that a few telephones of the Bell Patents were sold to residents here before the company plaintiff was organized; but none have been sold since, except through the company plaintiff. It is proven in evidence that Messrs. W. G. Irwin & Co. have imported 50 or 60 instruments, but I gather from the testimony of 'Cassidy and Hubbard that they were close imitations of the Bell Telephone and Blake Transmitter, but do not bear the official stamp and were not manufactured under the "Bell Patents." There was no evidence offered as to the source from which the Hilo Telephone Co. received its instruments.

It seems strange that the Honolulu subscribers were willing to part with a controlling proportion of the stock in the contemplated company for a consideration not evidenced by anything but oral, and therefore not definitely remembered, declarations, and an unsigned, pencil memorandum of a prospectus. On the other hand the company plaintiff does not seem to have voted,

26

since its incorporation, the stock to the company represented by Mr. Hubbard.

No evidence in the way of an assignment or otherwise is shown to have been presented to the company plaintiff to show that the Oriental Bell Telephone Co. had sold out its property and rights to, or had become merged in, the Oriental Telephone Co., (Limited). A copy of the charter of the latter company exhibited in Court, shows that it was not incorporated until February 7th, 1881. But the stock was allotted, and the certificates therefore have been passed to this company and are now held by its agent, Mr. Adams. This transfer was made to the London Co. apparently on the letter above referred to, dated 18th May, 1881, of Mr. Hubbard to Mr. Widemann, as President of the Honolulu Co., advising him to transfer the stock to the new company.

I did not regard it as proved that this was accomplished by false representations and threats to remove the secretary from office. It is shown that the defendant company did not control a sufficient amount of stock to do this, and I think Mr. Berger must have been mistaken, or he deduced this from Mr. Adams' letter to Mr. Berger of June 9th, 1881, where he says that unless the certificates were issued he would "advise the vice-president to call a meeting of the company plaintiff to take such measures as may be deemed necessary to protect the Oriental Co.'s interest."

The force of Mr. Widemann's testimony that a fraud had been committed in procuring the stock, is somewhat weakened by his conduct in negotiating with the London Co. for the purchase of their stock in the Honolulu Co., and otherwise dealing with them as the *bona fide* owners of the stock. I refer mainly to his written proposition of June 28th, 1881, to pay a royalty to the company defendant for the instruments used in commutation of their stock, and where he signs himself as "President of the Hawaiian Bell Telephone Co."

A letter from the secretary of the Oriental Telephone Co., (Limited), of date 13th July, 1882, to Mr. Adams is in evidence, in which the company repudiates the idea that Mr. Hubbard

could have undertaken to promise that the Hawaiian Co. should have the exclusive sales at the islands of all telephones; or that they would be bound by any such representations.

I find upon a review of the whole case that the consideration for the allotment to the Oriental Bell Telephone Co. of the 450 paid-up shares of the stock of the company plaintiff was the Patent Rights and concessions then held by that company, which covered the "Bell Hand Telephone" and the "Blake Transmitter," and that this consideration has not failed.

Also, that the defendant's company's assignors (the Oriental Bell Telephone Co.) did not, as in the bill alleged, represent that no telephone instruments could be manufactured, bought or sold without the consent of that (the last-named) company, and that said company had the sole and exclusive right to dispose of the same, etc., and therefore the bill is dismissed with costs.

*Messrs. F. M. Hatch & E. Preston,* for the plaintiffs.

*Messrs. A. S. Hartwell & S. B. Dole,* for the defendants.

Honolulu, May 5th, 1883.